**Lee Euster BECKETT, Plaintiff,**

v.

**KENT COUNTY, Defendant.**

**No. G 79–455 CA 1.**

United States District Court,
W. D. Michigan, S. D.

Jan. 10, 1980.

Lee Euster Beckett, pro se.

Shelia A. Kinney, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich., for defendant.

## OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

Ms. Lee Euster Beckett, plaintiff, has requested that this Court exercise its discretion pursuant to Section 706(f)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1) (1976), as amended, to appoint an attorney to represent her with respect to her employment discrimination claim against the defendant, Kent County, Michigan. Ms. Beckett claims that Kent County failed to hire her on account of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976), as amended [hereinafter "Title VII"].

On September 2, 1976, Ms. Beckett applied for the position of Kent County Civil Defense Coordinator. On January 11, 1977, a male applicant was hired to fill the position. On March 25, 1977, plaintiff filed a formal complaint of sex discrimination with the Michigan Civil Rights Commission. The Commission's initial report of its findings, dated October 21, 1977, shows that she was one of 47 persons applying, 38 of whom were men (nine black, one American Indian, and 28 white); and nine women (five black, four white). Of these 47 applicants five were selected for interviews based upon their qualifications and experience, and after these interviews defendant appointed a qualified and experienced man to fill the position. Plaintiff was not among those interviewed. The Commission's investigation did not disclose evidence of unlawful discrimination against Ms. Beckett.

Ms. Beckett was then accorded a hearing by the Michigan Department of Civil Rights on June 22, 1978, at which she was represented by counsel. She was there challenging the sufficiency of the original investigation and the conclusions based on that investigation. The Hearing Referee's report, dated September 27, 1978, concluded that there was an adequate investigation; that the decision, findings and recommendations were based upon a thorough and comprehensive investigation; and that the conclusions therefrom were not erroneous. Despite this report, on November 13, 1978, the Commission set aside the original Order of Dismissal of October 21, 1977, and directed the Department of Civil Rights to further consider Ms. Beckett's complaint giving specific attention to:

1. The method, procedure, standard used, prior to and on the date of complaint, to hire administrators where no examination is required.

2. The written method, procedure and/or standard used to determine the minimum qualification or lack of minimum qualification of five qualified male and nine female.

3. Interview the five males who meet the minimum qualifications, giving maximum education, qualifying experience in detail, grade points, and/or rating in each area of concern as spelled out in the job description and number of years experience.

4. Interview the nine female applicants supplying the same information requested in item three above.

5. Interview Claimant, requesting greater detail of her Civil Defense program experience.

6. A comprehensible comparison between Claimant and the five qualifying male applicants giving progressive years of experience, training and

education, including on-the-job training and voluntary training.

*In Re Lee Beckett v. Kent County,* (Order of the State of Michigan Civil Rights Commission, November 21, 1978).

After this further investigation the Commission issued another Order of Dismissal, dated February 21, 1979, again stating that its investigation "did not disclose evidence of unlawful discrimination against the claimant." The summary of findings contained in this Order of Dismissal explained the case this way:

> The claimant, a woman, alleged she was not given an equal employment opportunity because of her sex.
>
> The respondent stated the claimant was not considered for employment for not meeting the position qualifications, her employment application and resume did not show any experience with civil defense programs.
>
> A review of the respondent's policy and procedures used prior to and on the date of complaint to hire administrators, where no examination was required, revealed that the respondent (a) screened all applications and resumes to determine whether or not the applicants met the required qualifications, (b) separated qualified and unqualified applicants based on the information they provided on their applications or resumes, (c) classified the qualified applicants according to their degree of education, business administration and civil defense experience, and (d) scheduled only qualified applicants for an interview.
>
> Employment applications and resumes further revealed that every person who was interviewed was better qualified than the claimant; that the person selected for the Civil Defense Coordinator position had 10 years of previous work experience.

Plaintiff next went to the United States Equal Employment Opportunity Commission (EEOC) raising, in substance, the same objections concerning the Michigan Commission's investigations that she had already raised at the June 22, 1978 hearing.

After reviewing the Michigan Commission's findings and the record presented (and after Ms. Beckett had made her objections clear) the EEOC issued its determination, dated April 11, 1979, which concluded "that there is not reasonable cause to believe that the charge is true." On July 11, 1979, the United States Department of Justice issued a "Notice of Right to Sue," and, on July 27, 1979, this action was filed.

It appears to be the consistent finding at every level of administrative process that the defendant, Kent County, did not unlawfully discriminate against Ms. Beckett in failing to interview her or hire her for the position of Civil Defense Coordinator. Kent County was interested in filling the position with a person with considerable experience in Civil Defense programs. This is apparent from both the announcement of August 23, 1976 from the Kent County Personnel Department (Plaintiff's Exhibit No. 5), and from the advertisement of the position in the local newspaper (Plaintiff's Exhibit No. 4). Yet Ms. Beckett, who now claims to have some such experience, made no mention of that experience whatsoever in her application to Kent County for the position (Defendant's Exhibit No. 1).

In the declaration in support of her request for court appointed counsel, filed with her complaint, plaintiff has stated that she has no income, $300 in cash or bank accounts, other property pledged as security on a U.S. SBA loan (this consists of a diamond ring and a car according to plaintiff's letter of August 20, 1979 addressed to Judge Fox), and that she has no dependents.

■ The statute that governs a request for the appointment of counsel in a Title VII case is Section 706(f)(1), 42 U.S.C. § 2000e–5(f)(1) (1976), which reads in pertinent part:

> Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security.

It is clear that this language does not create an unqualified right to appointed counsel, *Caston v. Sears, Roebuck and Company*, 556 F.2d 1305 (5th Cir. 1977); *Johnson v. Hertz Corporation*, 316 F.Supp. 961 (S.D.Tex. 1970); *Puffer v. Cessna Aircraft Company*, 308 F.Supp. 443 (D.Kan.1969).

The factors frequently mentioned in the case law that affect the decision of whether to appoint counsel in a Title VII case include:

(A) Whether the plaintiff states a meritorious claim,[1]

(B) Whether plaintiff has the ability to pay an attorney,[2] and

(C) Whether plaintiff has made diligent efforts to secure counsel on a contingent fee or other basis.[3]

■ In determining whether a claim is meritorious, substantial weight, although not preclusive effect, can be given to the determination of the EEOC as to whether reasonable cause for complaint exists. In *Caston v. Sears, Roebuck and Company, supra*, the Fifth Circuit discussed the issue this way:

The district court may, perhaps even should, inquire of plaintiff as to the validity of the no reasonable cause determination and why plaintiff considers the determination to be in error. Surely, the determination of the administrative agency created to enforce the civil rights law is not to be ignored. In this regard, a finding that the EEOC determination is supported by substantial evidence in the investigative file and that plaintiff's objections thereto are patently frivolous would weigh heavily in the scales against appointing an attorney.

The Sixth Circuit has made it clear "that denial of counsel is not mandated by an EEOC finding of no probable cause. Indeed, [the Sixth Circuit] would regard a record which showed this as the sole reason for denial of counsel as founded on error." *Harris v. Walgreen's Distribution Center*, 456 F.2d 588, 590 (6th Cir. 1972). To do otherwise would render the administrative agency determination unreviewable.

■ A review of the reasons stated for the EEOC decision and the decision of the agency involved, taken together with their findings of no reasonable cause, however, can clearly be the basis for denying court appointed counsel to plaintiff where plaintiff's objections to their reasons are insubstantial, *Caston v. Sears, Roebuck and Company, supra; McIntyre v. Michelin Tire Corp.*, 19 EPD ¶ 9172 (D.S.C.1978). In this case Ms. Beckett has raised no objections to the findings of the Michigan Civil Rights

1. *Caston v. Sears, Roebuck and Company, supra* (vacating and remanding District Court's denial of application for court appointed counsel where record did not indicate whether trial court exercised a reasoned and well-informed discretion which could be reviewed); *Harris v. Walgreen's Distribution Center*, 456 F.2d 588 (6th Cir. 1972) (affirming the District Court's refusal to appoint counsel); *McIntyre v. Michelin Tire Corp.*, 19 EPD ' 9172 (D.S.C.1978) (motion denied); *Sol v. I.N.A. Insurance Company*, 414 F.Supp. 29 (E.D.Pa.1976) (court denied a request to appoint counsel until claimant, proceeding *pro se*, could show factual basis for claim and that it was meritorious); *In re Application of Jordan*, 4 EPD ' 7523 (N.D.Ill.1971) (request denied as case appeared to lack merit); *Petete v. Consolidated Freightways*, 313 F.Supp. 1271 (N.D.Tex.1970) (counsel appointed); *Edmonds v. E. I. duPont deNemours & Company, Inc.*, 315 F.Supp. 523 (D.Kan.1970) (defendant's motion to reconsider the court's prior appointment of an attorney denied); *Smith v. Fleming Company, Inc.*, 3 EPD '. 8220 (W.D.Mo.1969) (Legal Aid attorney appointed);

*Green v. Cotton Concentration Company*, 294 F.Supp. 34 (S.D.Tex.1968) (motion denied as premature).

2. *Caston v. Sears, Roebuck and Company, supra; Harris v. Walgreen's Distribution Center, supra; McIntyre v. Michelin Tire Corp., supra; McGowan v. U. S. Information Agency*, 14 EPD ' 7533 (D.D.C.1977) (appointed counsel motion denied to a GS–13 plaintiff); *Sol v. I.N.A. Insurance Company, supra; Puffer v. Cessna Aircraft Company, supra.*

3. *Caston v. Sears, Roebuck and Company, supra; McIntyre v. Michelin Tire Corp., supra; Sol v. I.N.A. Insurance Company, supra; Johnson v. Hertz Corporation*, 316 F.Supp. 961 (S.D.Tex.1970) (motion denied without prejudice where plaintiff failed to prove that he made a diligent effort to obtain counsel); *Petete v. Consolidated Freightways, supra; Edmonds v. E.I. duPont deNemours & Company, Inc., supra; Green v. Cotton Concentration Company, supra.*

Commission in this Court that were not already considered by the Commission or the EEOC. The Michigan Commission twice investigated plaintiff's allegations and each time found no evidence of unlawful discrimination. To the contrary, the Commission found that Kent County's failure to interview Ms. Beckett was due to Ms. Beckett's own failure to indicate the desired qualifications for the position in her application. After examining the Commission's reports and the various pleadings and exhibits in the record, this Court finds that such a conclusion is inescapable. It is therefore the conclusion of this Court, based upon the record thus far presented to it, that Ms. Beckett has not shown that she has a claim meritorious enough to warrant the Court's exercising its discretion to appoint an attorney to represent her.

A further indication that the case lacks merit is that plaintiff has been unable to obtain counsel on her own despite what is, in effect, a built in contingent fee arrangement in Title VII. In *Johnson v. Hertz Company*, 316 F.Supp. 961, 962 (S.D.Tex. 1970), for example, the court said the following:

> If plaintiff's claim has merit it seems reasonable to believe that he will be able to retain counsel on a contingent fee basis. In sections 2000e–5(g) and (k) of "the act" Congress has laid the basis for a potential contingent fee by authorizing the payment of back pay, reduced by interim earnings, and by authorizing the Court to award reasonable attorney's fees as court costs in appropriate cases.

*Accord, McIntyre v. Michelin Tire Corp.*, 19 EPD ¶ 9172 (D.S.C.1978); *Green v. Cotton Concentration Company*, 294 F.Supp. 34 (S.D.Tex.1968). The Court, of course, is not unmindful that under some circumstances a particular plaintiff may be unable to secure the services of an attorney who is willing to prosecute even a meritorious claim. In this case, however, the plaintiff's claim does not appear to have the requisite merit for an attorney to be willing to handle the case on contingency, nor the requisite merit for the Court to appoint counsel to handle the case on such a basis.[4]

Because this Court finds that Ms. Beckett has failed to show the existence of a meritorious claim it will not go on to determine the issue of whether the income of Ms. Beckett's husband can or should be taken into account when determining her ability to pay counsel herself.[5] Ms. Beckett has

4. If the plaintiff and his or her appointed counsel ultimately prevail on the merits of the case the court, of course, may award reasonable attorney's fees pursuant to 42 U.S.C. § 2000e–16 (1976). If the plaintiff does not prevail, on the other hand, there are no funds with which to pay the court appointed counsel. "No funds have been appropriated by Congress to pay the fees of counsel appointed pursuant to 42 U.S.C. § [2000e–5(f)(1)]," *Sol v. I.N.A. Insurance Company*, 414 F.Supp. 29, 30. (E.D.Pa.1976).

The Court is also aware of the recent case of *In re Nine Applicants*, 20 FEP Cases 801 (N.D. Ala.1979) where the court concluded that the language of § 706(f)(1) violates the Thirteenth Amendment prohibition against involuntary servitude. U.S.Const., amend. XIII. That court's opinion stems from the fact that Title VII does not create a fund or provide a method of paying court appointed counsel absent a plaintiff's success on the merits. Because it is not necessary to the decision in this case, however, this Court expressly declines to express its opinion on this constitutional issue.

5. The plaintiff's ability to pay is primarily relevant to the issue of whether plaintiff is able to obtain counsel without the court's assistance.

The Fifth Circuit discussed the factor as follows:

> While the statute does not require that one be a pauper before counsel may be appointed, a person's financial resources should certainly be considered. While we could perhaps envision a case in which even a rich man could not obtain legal counsel, we believe that such a case would indeed be rare.

*Caston v. Sears, Roebuck and Company, supra.*

In *Petete v. Consolidated Freightways*, 313 F.Supp. 1271, 1272 (N.D.Tex.1970), however, the court stated "that plaintiff's motion for appointment of counsel should not be denied merely because she is not entirely destitute. [citation omitted]. This is particularly true since plaintiff has, as represented in her affidavit, been unsuccessful on several occasions in attempting to secure the services of an attorney on a contingent fee basis." Significantly, the plaintiff in *Petete* volunteered to contribute toward the expense of the lawsuit the proceeds from certain stocks that she held, which the court said "greatly facilitates the granting of her motion."

The Sixth Circuit, in *Harris v. Walgreen Distribution Center, supra*, relied, in part, on the

testified that she cannot afford counsel with the assets that she herself has, and that her husband is unwilling to contribute financially to her cause.

Ms. Beckett has also testified as to a fairly substantial effort to obtain counsel on her own on a contingent fee or other basis, apparently without success.

For the reasons discussed above, this Court is unwilling to exercise its discretionary power to appoint counsel to represent the plaintiff in this case. Plaintiff's request for court appointed counsel, therefore, is denied.

IT IS SO ORDERED.

fact that plaintiff-appellant and his wife were both gainfully employed in refusing to overturn a district court's denial of a motion to appoint counsel. (It was this factor in combination with the no reasonable cause finding by the EEOC that the court relied on). Other cases on this issue are cited in footnote 2, *supra*.