**Nancy S. BRADSHAW, Individually and on behalf of others similarly situated, Plaintiff-Appellant,**

v.

**ZOOLOGICAL SOCIETY OF SAN DIEGO, et al., Defendant-Appellee.**

No. 79–3051.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1980.

Decided Dec. 7, 1981.

Colleen M. O'Connor, E.E.O.C., San Diego, Cal., argued, for plaintiff-appellant; Nancy S. Bradshaw, in pro per., on brief.

Robert W. Bell, Jr., Gary, Cary, Ames & Frye, San Diego, Cal., argued, for defendant-appellee; Donald N. Bauhofer, San Diego, Cal., on brief.

Lutz Alexander Prager, E.E.O.C., Washington, D.C., amicus curiae.

Before WALLACE, SKOPIL, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Appellant Nancy Bradshaw, acting *in propria persona*, filed this sex discrimination action in early 1975, alleging that she was unlawfully denied employment by the Zoological Society in 1969 and again in 1971.[1] She had earlier filed a charge with the Equal Employment Opportunity Commission (EEOC) and the EEOC had found "reasonable cause" to believe that the Zoological Society discriminated against Bradshaw in denying her application for the position of education director at the Zoo.[2]

In April of 1975, the district court granted summary judgment to the Zoological Society, finding Bradshaw's claims under both Title VII and section 1983 to be time-barred. Bradshaw appealed. Nearly three years later, a panel of this court reversed both determinations, and remanded the case for further proceedings. *Bradshaw v. Zoological Society of San Diego*, 569 F.2d 1066 (9th Cir. 1978).

Proceedings in the district court resumed with the filing of an answer to the complaint in April of 1978. Shortly thereafter, Bradshaw filed a motion for appointment of counsel pursuant to 42 U.S.C. section 2000e–5(f)(1)(B),[3] and for leave to proceed *in forma pauperis*.[4] Supporting affidavits were filed detailing her unsuccessful efforts to obtain an attorney and her impecunious financial situation. The district court granted Bradshaw leave to proceed *in forma pauperis* and denied her motion for appointment of counsel.

Bradshaw filed a motion for reconsideration of the order denying her request for appointed counsel, supported by a supplemental affidavit, and also sought leave to amend her complaint to plead a class action.[5] On September 11, 1978, both of these motions were denied. Bradshaw requested that the district court certify this order for interlocutory appeal pursuant to 28 U.S.C. section 1292(b). The district court declined to do so, and Bradshaw filed a timely notice of appeal from the order of September 11, pursuant to 28 U.S.C. section 1291.

## I. JURISDICTION

We are confronted at the outset by three issues relating to our jurisdiction over this appeal. Appellee contends that the order denying leave to amend the complaint to plead a class action is not appealable because not final within the meaning of section 1291 and challenges the appeal of the order denying appointment of counsel on the ground that it was taken from an unappealable order denying reconsideration of the district court's earlier denial of her original motion. We also address a third issue, whether an order denying appointment of counsel is appealable under section 1291.

---

1. Bradshaw brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (1976), and 42 U.S.C. § 1983. Besides gender, she also claims discrimination on the basis of marital status, and in retaliation for her past complaints of discrimination.

2. The reasonable cause determination in 1974, led to an unsuccessful attempt by the EEOC at conciliation and the issuance of a "right to sue" letter to Miss Bradshaw.

3. This section provides, in part:
   Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security.
   42 U.S.C. § 2000e–5(f)(1)(B) (1976).

4. Bradshaw's motion requested the latter relief pursuant to 28 U.S.C. § 1915, although § 2000e–5(f)(1) contains a similar provision.

Although Bradshaw relied, successfully, on cases involving § 1915, the additional language in § 2000e–5(f)(1) may require a lesser showing in Title VII cases. *Flowers v. Turbine Support Div.*, 507 F.2d 1242, 1244 (5th Cir. 1975).

5. There is some confusion with regard to whether the issue of the propriety of the various class allegations was raised on the prior appeal. In its previous memorandum decision, the district court dismissed claims brought on behalf of ethnic and racial minority groups, and ordered stricken allegations that the action was brought on behalf of "all adult females and all unmarried adult females." The opinion of the previous panel of this court makes no mention of these rulings, although Bradshaw claims that the issue was presented to that panel by the EEOC in its *amicus* brief. In light of our conclusion that we presently lack jurisdiction over the order denying leave to amend, we express no opinion on this aspect of the case.

Although this last issue is not raised by appellee, we are nevertheless obligated to determine the question of our appellate jurisdiction. *Rowe v. United States*, 633 F.2d 799, 800 (9th Cir. 1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981).

 Each of these jurisdictional issues requires reference to the final judgment rule embodied in 28 U.S.C. section 1291, which vests in the courts of appeal "jurisdiction of appeals from all final decisions of the district courts . . . ." In its general application, this statutory language has been read to restrict appellate jurisdiction to situations where the order of the district court "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). However, the Supreme Court has recognized that some orders by their nature require review at an earlier stage if they are to be effectively reviewed at all. In such cases the Court has said that section 1291 must be given a "practical rather than a technical construction," *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), because "a rigid insistence on technical finality would sometimes conflict with the purposes of the statute." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 471, 98 S.Ct. 2454, 2459, 57 L.Ed.2d 312 (1978).

 The *Cohen* collateral order doctrine allows appeals from orders that can be said to fall within

> that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require

that appellate consideration be deferred until the whole case is adjudicated.

337 U.S. at 546, 69 S.Ct. at 1225. This general standard, recently reaffirmed by the Supreme Court,[6] guides our inquiry. We recognize that the *Cohen* doctrine is to be regarded as an exception to the final judgment rule, and thus proceed mindful also of the policies underlying the finality requirement.

## A. Denial of Leave to Amend

 The order of the district court denying Bradshaw leave to amend her complaint is not appealable. Such orders, as a class, contemplate further proceedings in the district court, and this court has previously held that review is available after the final judgment, into which they merge. *Sackett & Kvan, Inc. v. Beaman,* 399 F.2d 884, 889 n.6 (9th Cir. 1968). The opportunity to amend, if erroneously denied, may be effectively protected after final judgment on the merits.

In addition to the later availability of effective review, such orders also fail to qualify under *Cohen* as "a final disposition of a claimed right." 337 U.S. at 546, 69 S.Ct. at 1225. Rather, by the terms of Fed.R.Civ.P. 15(a), an order denying leave to amend is inherently tentative, or, in the words of *Cohen,* "subject to reconsideration from time to time."[7] *Id.* at 547, 69 S.Ct. at 1226. This same characteristic was deemed significant with regard to orders denying class certification under Fed.R.Civ.P. 23 in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 312 (1978), where the Supreme Court held such orders unappealable under section 1291, in part because they are "subject to revision in the District Court." *Id.* at 469, 98 S.Ct. at 2458.[8] We

---

6. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 673–74, 66 L.Ed.2d 571 (1981).

7. Rule 15 provides:
    (a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend his pleading only by leave of court or by written

consent of the adverse party; and leave shall be freely given when justice so requires. . . .

8. Rule 23(c)(1) provides:
    As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

reach the same conclusion with regard to the order here.[9]

### B. Order Denying Motion for Reconsideration

■ There is some confusion concerning from which orders Bradshaw is now appealing. The Zoological Society suggests that Bradshaw must be appealing from the order of September 13, which denied, in the Society's view, a motion for reconsideration of Bradshaw's earlier motions. The Society argues that no appeal may be taken from a denial of a motion for reconsideration, and implies that an appeal from the denial of appointment of counsel is time-barred because the October 3 notice of appeal is more than 30 days after the July 13 denial of the motion for appointment of counsel. The notice of appeal itself states that the appeal is from the order of September 13, but further states that Bradshaw is appealing the denials of her motion for appointment of counsel, motion for reconsideration, and motion for leave to amend. Under the circumstances of this case, we conclude that the motion for "reconsideration" was, in effect, a renewal of those motions on the merits and thus the notice of appeal was timely filed.[10]

### C. Order Denying Appointment of Counsel

■ The principal issue before us is whether orders denying appointment of counsel in Title VII suits are appealable under section 1291. We find ourselves in agreement with the circuits that have previously addressed this question. All have held such orders appealable, finding them to fall squarely within the Cohen "collateral order" exception to the final judgment rule.[11] The starting point for our discussion is the Court's statement in Cohen :

9. We note that the fact that this order is tentative in nature means that the district court will consider a new motion to amend the complaint to plead a class action if one is made by appointed counsel. We are certain that the district court will carefully consider any such request made by counsel, who will have had an opportunity to make an independent appraisal of the propriety of a class action and the training necessary to make the detailed showing required by Fed.R.Civ.P. 23(a). See, e. g., Johnson v. Hertz Corp., 316 F.Supp. 961, 962 (S.D.Tex.1970).

10. In interpreting the July 24 motion, and the September 13 order denying the motion, we may exercise some latitude because the motion was filed by a party acting in propria persona. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Looking at the moving papers as a whole, we interpret the July 24 motion, not as a motion for rehearing of the earlier motions, but rather as a renewal of those motions on the merits. Bradshaw attached to her motion an affidavit describing her efforts to retain an attorney since the denial of her earlier motion. This affidavit was intended as further support of her need and eligibility for appointed counsel. If she had prevailed in her attempt to obtain an attorney on this new motion, she would not have been barred for lack of counsel from pleading a class action. Therefore, she coupled her motion to amend with her motion for appointment of counsel. Her argument was not that her earlier motions should be reheard, but that the court should grant her new motions in light of the new circumstances. The Society responded to her argument on the merits. The district

judge apparently treated the matter on the merits, as he separately denied the motions for appointment of counsel and for leave to amend, rather than simply denying Bradshaw the opportunity to be reheard. Thus, we consider this appeal to be from the September 13 order denying the motions for appointment of counsel and for leave to amend. Therefore, the October 3 notice of appeal was timely filed.

11. Four circuits have expressly held orders denying appointment of counsel in Title VII cases appealable under Cohen. Jones v. WFYR Radio, 626 F.2d 576 (7th Cir. 1980); Hudak v. University of Missouri, 586 F.2d 105 (8th Cir. 1978) (per curiam), cert. denied, 440 U.S. 985, 99 S.Ct. 1799, 60 L.Ed.2d 247 (1979); Caston v. Sears, Roebuck & Co., 556 F.2d 1305 (5th Cir. 1977); Spanos v. Penn Cent. Trans. Co., 470 F.2d 806 (3d Cir. 1972) (per curiam); cf. Ray v. Robinson, 640 F.2d 474, 475–77 (3d Cir. 1981).

In addition to the four circuits which have expressly held orders denying appointment of counsel in Title VII cases appealable, the Second Circuit has held that an order denying appointment of counsel under 28 U.S.C. § 1915(d) is appealable under Cohen. Miller v. Pleasure, 296 F.2d 283 (2d Cir. 1961) (per curiam), cert. denied, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962). The Miller reasoning is equally applicable to Title VII orders. Only the Tenth Circuit has held orders denying appointment of counsel under section 1915(d) not appealable as final orders. Cotner v. United States Probation Officer Mason, 657 F.2d 1390 (10th Cir. 1981).

Further, the Sixth Circuit has implicitly reached a similar result with respect to orders

This decision appears to `fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

377 U.S. at 546, 69 S.Ct. at 1225–26.

Few of the cases deciding the question of appealability of a refusal to appoint counsel have considered the issue sufficiently difficult to merit prolonged discussion; most take their lead from the Fifth Circuit's opinion in *Caston v. Sears, Roebuck & Co.,* 556 F.2d 1305 (5th Cir. 1977).[12] The court, relying on *Cohen,* gave close attention to the nature of the order in reaching its conclusion regarding appealability; to deny review, the court suggested, would impede, rather than further, the ultimate resolution of the litigation:

> The refusal to appoint an attorney is clearly "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546 [69 S.Ct. 1221, 1226, 93 L.Ed. 1528] . . . (1949). Obviously, the refusal to appoint an attorney is collateral to the merits of the case. The decision to deny the assistance of an appointed attorney to a layman unschooled in the law in an area as complicated as the civil rights field is truly too important to be deferred until a resolution on the merits can be had. Such an individual likely has little hope

---

denying appointment of counsel in Title VII suits, without discussing the issue. *Harris v. Walgreen's Dist. Center,* 456 F.2d 588 (6th Cir. 1972).

**12.** *Caston* is also the common source for the test applied in reviewing such orders on the merits. *See* part II, *infra.*

**13.** Cf. *Spanos v. Penn Cent. Trans. Co.,* 470 F.2d 806 (3d Cir. 1972) (per curiam), where the Third Circuit found an order denying appointed counsel appealable under *Cohen* despite the fact that the district court left open the possibility that a renewed request might later be

of successfully prosecuting his case to a final resolution on the merits.

*Id.* at 1308.

The Supreme Court has, since *Caston,* restated the *Cohen* doctrine to require that " 'the order . . . conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.' " *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 312 (1978)). Our examination of each of these factors leads us to agree with the Third Circuit's recent decision, *Ray v. Robinson,* 640 F.2d 474, 476–77 (3d Cir.1981), reaffirming the unanimous view that orders denying motions for appointment of counsel are appealable under section 1291.

*1. Finality*

The first, and perhaps the simplest, requirement derives from the relation between trial and appellate courts. Section 1291 serves to preserve that relation as one of review, not supervision. Thus the decision of the district court on the particular point at issue should be final. This criterion is satisfied here in that the district court has clearly said its last word on the subject of appointment of counsel, in no way indicating that its order was tentative. Indeed, the appeal here is taken from the denial of a motion to reconsider the earlier ruling.[13] The trial court has effectively, unequivocally, and, as we discuss below, erroneously rejected Miss Bradshaw's request for assistance.[14]

---

granted. Such a condition, said the court, "[did] not detract from the finality of the District Court's disposition . . . ." *Id.* at 808 n.3 (citations omitted). No such condition was suggested below in this case.

**14.** In *Cohen,* the Court noted that a dispute as to the amount of a bond might not be appealable under § 1291 since the bond statute expressly provides for reconsideration of that question "from time to time." 337 U.S. at 547, 69 S.Ct. at 1226. Similarly, in *Coopers & Lybrand* the Court found a class action ruling "inherently tentative" since the rule governing such actions expressly provides that orders in-

## 2. Separability

■ The second criterion under *Cohen* requires that the court examine the relation between the substance of the order and the merits of the action itself. In *Cohen* the Court characterized the order as "separable from, and collateral to" the merits. The Court stated that the separability requirement would be satisfied where the order was "*too independent* of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1226 (emphasis added). The Court said the collateral order exception would not apply to decisions that are "steps" towards final judgment on the merits. One might well simply conclude from the above, as did the Fifth Circuit in *Caston*: "Obviously, the refusal to appoint an attorney is collateral to the merits of the case." 556 F.2d at 1308. However, in view of the position taken by our dissenting colleague concerning this issue, we analyze the question in more detail than the Fifth Circuit thought necessary.

The basic purpose of the separability requirement is to permit review of important determinations that are truly collateral, *i. e.*, where interlocutory review will not result in unwarranted interference by appellate courts in determinations properly reserved to the district court until completion of the trial, determinations affecting the merits of the cause of action itself. The distinction drawn by this part of *Cohen* is between orders that are a part of determining the merits of the claim and orders that do not constitute a part of determining "the cause itself." As the Court said in summarizing its opinion, "[w]e hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." 337 U.S. at 546–47, 69 S.Ct. at 1226. We note further *Cohen's* recognition that in some cases a simplistic, absolutist division may not be possible and that therefore appeals will be permitted

even in those cases where the order meets only a relative standard—*i. e.*, "too independent of the cause itself to require that appellate consideration be deferred." Immediately thereafter the Court noted the need for a "practical" rather than "technical" construction of the rule.

In *Coopers & Lybrand* the Court further explained the separability requirement, in holding orders refusing to certify a class non-appealable under section 1291, in part because appellate courts would be required to become " 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " 437 U.S. at 469, 98 S.Ct. at 2458. Determinations regarding class certification involve issues such as typicality, adequacy, and the common question requirements under Fed.R.Civ.P. 23. Exhaustive factual records are frequently required for purposes of such decisions. *See* C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* 485 n.45 (1976), *cited in Coopers & Lybrand*, 437 U.S. at 469 n.12, 98 S.Ct. at 2458 n.12. The same is true with respect to the legal issues involved. Frequently the discovery proceedings and the hearings are extensive. Accordingly, the court concluded that to allow interlocutory appeals in those cases would "enmesh" appellate courts in factual and legal matters intimately related to the substance of "the cause itself" and would result in appellate court determinations that would necessarily affect the later determination of those issues by the trial court.

■ The argument, to the extent that any exists, over whether orders denying appointment of counsel are "separable from, and collateral to" the merits, or put differently "too independent of the cause itself to require that appellate consideration be deferred," arises out of the application of one of the three basic criteria which must be met when civil rights plaintiffs seek

volving class status may be "altered or amended before the decision on the merits." 437 U.S. at 469 n.11, 98 S.Ct. at 2458 n.11. There is no provision in any statute or rule making orders

denying appointment of counsel "inherently tentative." *See also Firestone*, 449 U.S. at 380, 101 S.Ct. at 676–77 (Rehnquist, J., concurring).

appointed counsel. The criterion which causes our dissenting colleague difficulty in this case is: whether the Title VII claim is meritorious. *Caston*, 556 F.2d at 1309.[15] This requirement means only that the plaintiff must show that the claim has some merit, a showing usually satisfied by an EEOC determination of "probable cause."[16] Thus the order involves only incidental and usually indirect reference to the substance of the plaintiff's claim. It is not, however, dependent on the merits in a manner that renders it unappealable under section 1291, and does not, under any circumstances, require the court to become "enmeshed" in the issues involved in a determination of the merits.

Our conclusion is supported by *Roberts v. United States District Court*, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950) (per curiam), where the Supreme Court stated that an order denying leave to proceed *in forma pauperis* was appealable under section 1291 and *Cohen. Id.* at 845, 70 S.Ct. at 955.[17] This circuit has also so held. *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir.), *cert. denied*, 382 U.S. 896, 86 S.Ct. 192, 15 L.Ed.2d 153 (1965). *Forma pauperis* status requires two findings very similar to those required in this case: (1) a finding of indigency, and (2) a finding that the underlying claim has some merit.[18] It is the second finding which is of significance to this part of our discussion.[19]

The orders in this case and in *Roberts* meet the separability test set forth in *Cohen*. Neither the appointment of counsel decision, nor the *in forma pauperis* determination, constitutes a "step toward final *disposition of the merits* of the case." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225 (emphasis added). Neither requires the court to become "enmeshed in the underlying factual and legal issues." *Coopers & Lybrand*, 437 U.S. at 469, 98 S.Ct. at 2458. Each simply requires the court to recognize that the underlying claim has some merit. Both involve preliminary procedural determinations about how the trial on the merits will proceed, *e. g.*, with or without counsel, with or without payment of fees. Both involve rights "separate from, and collateral to, rights asserted in the action." The reference to the merits required in both cases is minimal and incidental. Finally, in both cases the decision on appeal from denial of the motions will not in any way affect the district court's determinations on the merits

---

**15.** Title VII provides for appointment of counsel "in such circumstances as the court may deem just . . . ." 42 U.S.C. § 2000e–5(f)(1)(B) (1976). The three criteria utilized in appointment of counsel cases have been established by case law. *See* part II of this opinion for a discussion of those criteria.

**16.** *See* text accompanying notes 46–47 *infra*.

**17.** We cite *Roberts* here solely for the proposition that a requirement that the court determine whether a claim has merit in order to decide an issue that is otherwise separate from and collateral to the cause of action itself does not transmute that issue into one which is *not* separate and collateral. Any contention that *Roberts* is distinguishable must be based on an entirely different argument; *i. e.*, that denial of an *in forma pauperis* motion would terminate the litigation and thus preclude effective review. That distinction, whatever merit it may have, is not relevant to the issue discussed in this section of our opinion, nor does it in any way undermine the reliance we place on *Roberts*.

**18.** In *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965), we said:

It is the duty of the District Court to examine any application for leave to proceed *in forma pauperis* to determine whether the proposed proceeding has merit and if it appears that the proceeding is without merit, the court is bound to deny a motion seeking leave to proceed *in forma pauperis*.

*Id.* at 116. In *Torre v. Garcia*, 444 F.2d 537 (9th Cir. 1971), we upheld the district court's dismissal of an *in forma pauperis* petition only because the district court found that "the action is frivolous and malicious." *Id.* Perhaps the best way to characterize the requirement relating to meritoriousness in *in forma pauperis* cases is to say that the petition must be non-frivolous. Whatever difference may exist between this standard and the standard applicable in appointment of counsel cases is of no significance for purposes of this part of our decision.

**19.** The third finding required in our case, inability to secure counsel, is also not relevant here.

"of the cause itself." *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1226.

In the case of motions for appointment of counsel, the nature of the court's role is, if anything, more limited than in the case of motions for leave to proceed *in forma pauperis*. In the former case, the court need normally look only to a determination by an administrative agency, the EEOC. For practical purposes, that agency's determination is ordinarily conclusive. If the agency has found "reasonable cause," as it did in Miss Bradshaw's case, the claim should normally be deemed meritorious for purposes of appointment of counsel, and the court need make no further inquiry with respect to that subject.[20] In making its determination whether the claim has merit in *in forma pauperis* cases, the court does not have the benefit of a prior administrative determination of this issue. It must always make an independent evaluation of the meritoriousness of the claim. Thus the scrutiny of the merits which the court is required to engage in is ordinarily greater in *in forma pauperis* cases than in appointment of counsel cases.

It would require both a disregard for *Roberts* and a misconception of the nature of the district court's function when civil rights plaintiffs seek appointed counsel, to conclude that a district court order denying counsel is not within the *Cohen* exception for matters "separate from, and collateral to, rights asserted in the action." It would require a similar disregard and misconception to conclude that review of such an order requires the court of appeals to become "enmeshed" in the underlying factual and legal issues. Where the EEOC has found probable cause, there is no risk of any consideration of the merits by the court of appeals; where probable cause has not been found, any consideration of the merits will be as limited as in cases involving *in forma pauperis* determinations.

Other orders that have been held appealable under the *Cohen* exception also require some reference to the merits. In *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), the Court relied on *Cohen* in holding an order denying a motion for reduction of bail appealable under section 1291. *Id.* at 6, 72 S.Ct. at 4. Such orders require reference not only to the "nature and circumstances of the offense charged . . . ," but also to "the weight of the evidence against the

**20.** The strong presumption created by a reasonable cause determination may be rebutted, as the EEOC suggests, if "the administrative finding is unsustainable on its face, is internally inconsistent, or is flawed in its legal reasoning." However, an EEOC determination that no reasonable cause supports the plaintiff's claim should be approached somewhat differently, for the reason that the plaintiff will be without the aid of counsel in challenging the agency's finding. As the Fifth Circuit suggested in *Caston*:

The district court may, perhaps even should, inquire of plaintiff as to the validity of the no reasonable cause determination and why plaintiff considers the determination to be in error. Surely, the determination of the administrative agency created to enforce the civil rights laws is not to be ignored. In this regard, a finding that the EEOC determination is supported by substantial evidence in the investigative file and that plaintiff's objections thereto are patently frivolous would weigh heavily in the scales against appointing an attorney.
556 F.2d at 1309.
Our dissenting colleague suggests that it is somehow unfair to give differing weight to favorable and unfavorable EEOC determinations when the right to counsel is at issue. There is no unfairness involved, in part because the opposing party has no legitimate interest in ensuring that the plaintiff, impoverished though she may be, is denied counsel. The right at issue is the plaintiff's right to a fair opportunity to vindicate fundamental rights. Defendants suffer no injury when plaintiffs are given that opportunity. An EEOC determination of reasonable cause ordinarily provides sufficient justification for allowing a civil rights litigant a fair crack at our judicial system. Although the defendant may be compelled to deal with an attorney instead of an untutored and poor layman, the defendant's rights are not jeopardized as a result; in fact, many defendants prefer the more orderly, rational, and reasonable process of negotiation or litigation which ensues when counsel is appointed. Moreover, where an unfavorable EEOC determination is so clearly erroneous that it does not serve as a bar to the appointment of counsel under the Fifth Circuit test which we adopt, a refusal to appoint counsel solely because of that determination would unfairly deny plaintiffs fundamental rights Congress intended to provide them.

accused." 18 U.S.C. § 3146(b).[21] Yet Justice Jackson, the author of *Cohen*, was able to assert, in finding that the separability requirement was satisfied, that the issues presented by such an order "are entirely independent of the issues to be tried . . . ." 342 U.S. at 12, 72 S.Ct. at 7 (Jackson, J., concurring).

Our conclusion regarding separability also finds strong support in *Rincon Band of Mission Indians v. Escondido Mutual Water Co.*, 459 F.2d 1082 (9th Cir. 1972), in which this court held appealable under section 1291 an order denying a demand by the plaintiffs that the Government provide them with counsel. The court based its conclusion squarely on *Cohen*. *Id.* at 1083–84. The basis of the plaintiff's demand was 25 U.S.C. section 175, which provided for representation by the United States of reservation Indians. Holding that the statute was directory only, the court rested its affirmance on the fact that the Government would be forced to take conflicting positions before the court and the Indian Claims Commission. 459 F.2d at 1085. A determination of the *Rincon* conflict of interest question involved an examination of the factual basis and legal context of the two claims. Yet the court there concluded that the order "did not involve the merits . . ." within the meaning of *Cohen*. *Id.* at 1083.

For the above reasons, we conclude that, in reviewing orders denying appointment of counsel, courts of appeal do not make determinations that affect the merits of the cause itself and do not become "enmeshed in factual and legal issues comprising the plaintiff's cause of action." To the contrary, they decide a simple matter, too important to be denied review, and wholly "separable from, and collateral to, rights asserted in the action."

### 3. *Effective Review*

■ The last criterion in assessing appealability under *Cohen* is whether the rights asserted can be adequately protected on appeal from the final judgment. We are unwilling to engage in two untenable assumptions we would be required to make in order to find that "effective review" is available after final judgment on the merits. The first is that civil rights plaintiffs are capable of prosecuting their own cases through trial; the second is that should they somehow succeed in doing so, they will have the determination and capability to perfect and conduct appeals properly and fully after they lose. Both assumptions overlook the congressional judgment to the contrary that led to the enactment of section 2000e–5(f)(1)(B).

As to the first assumption, we agree with the Fifth Circuit's statement in *Caston*, 556 F.2d at 1308, that "[s]uch an individual likely has little hope of successfully prosecuting his case to a final resolution on the merits." As to the appeal, *if any*, there is even less hope. We consider it evident that the effectiveness of appellate review will be seriously impaired by the very *nature of the order*. A civil rights litigant, untrained in the law, may well decide that he is incapable of handling the trial and drop his claim, commence trial but be compelled to abandon his efforts prior to final judgment,[22] fail on a technicality in any attempt to appeal should an adverse final judgment on the merits ever be reached, or fail, for lack

---

21. *See also Stack v. Boyle*, 342 U.S. at 8, 72 S.Ct. at 5 (Jackson, J., concurring) (discussing similar language of former Fed.R.Crim.P. 46(c)).

22. Abandonment of a claim out of self-recognized inability to litigate a complex civil case when statutory provision for appointment of counsel exists is not comparable to abandonment of a claim because the failure to certify a class renders pursuit of one's individual claim "economically imprudent." *Coopers & Lybrand v. Livesay*, 437 U.S. at 469, 98 S.Ct. at 2458 (1978). In *Coopers & Lybrand* the Court dealt separately with both the *Cohen* exception which is involved in the case before us and the entirely different "death-knell" doctrine which is not. The Court summarily disposed of the *Cohen* issue, finding, in a brief paragraph, that respondents met none of the three *Cohen* tests. 437 U.S. at 468–69, 98 S.Ct. at 2457–58. The Court then turned to the second issue before it, found that economic unfeasibility was insufficient reason to establish a new and separate exception to the general finality rule and rejected the proposed "death-knell" doctrine, which was based solely on economic considerations.

of legal knowledge, to make the requisite showing to obtain reversal.[23] We already have before us an example of Miss Bradshaw's relative inability to present legal arguments effectively on appeal from the denial of a simple motion, and particularly to deal with the technical procedural issues involved in the determination of those matters. That she would be unable effectively to prosecute a far more complex appeal after any final judgment on the merits is apparent.[24] Tenacity, however admirable, is no substitute for a knowledge of the law.[25]

Even if Miss Bradshaw managed to prevail to the extent of establishing liability, there is no reason to believe that she would obtain the full amount of any recovery due, nor that she would obtain an order resulting in the employment she seeks. The liability stage of a Title VII action is complex enough, but the issues involved in formulating the proper remedy strain the ability of many non-specialist practitioners, much less that of a plaintiff without legal training. Should Miss Bradshaw obtain any recovery, she may well not pursue an appeal based on

the insufficiency of the amount recovered, and should she obtain a monetary recovery, she may well not appeal even though she may be entitled, under the law, to the job she seeks. Without a thorough understanding of the complex legal issues involved and without the ability to appreciate or analyze the possible errors committed in the trial court, Miss Bradshaw would hardly be in a position properly to evaluate the question whether an appeal should be taken.

There are two aspects to the reviewability question. The concerns above are addressed primarily to the first, that " 'crucial collateral claims [will] be lost. . . .' " *Firestone*, 449 U.S. 368, 101 S.Ct. at 674 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 331 n.11, 96 S.Ct. 893, 901 n.11, 47 L.Ed.2d 18 (1976)). The Court also noted a second, the need to construe the finality requirement "so as not to cause . . . potentially irreparable injuries to be suffered." *Id.* In Miss Bradshaw's case, a trial without counsel would clearly cause such injury, since Miss Bradshaw would be bound by the inevitable prejudicial errors she would make at her

---

**23.** We need not determine what showing would be required to obtain reversal of the class of orders here involved if review took place following final judgment on the merits. However, without agreeing that it would be correct to do so, we can anticipate that some courts, at least, might impose a requirement that the plaintiff show that the error was prejudicial, particularly where an otherwise successful plaintiff complains that the remedy afforded was inadequate. Were such a rule adopted, it would render effective review of the underlying order even more highly improbable.

**24.** We note that Miss Bradshaw was fortunate enough to have the assistance of the Equal Employment Opportunity Commission as *amicus curiae* on both this and the previous appeal to this court. We cannot assume, however, that the EEOC will be willing or able to continue to assist her in this manner or to provide such assistance to civil rights plaintiffs generally in the future. Even if it did, that fact would not affect our analysis of the issues here involved.

**25.** We note that even the tenacity which Miss Bradshaw has thus far demonstrated might not be sufficient to permit her to obtain effective

relief if we were now to deprive her of her right to appeal. She seeks a specific job which, she alleges, she was denied for reasons which violate the law. The alleged discrimination by defendant initially occurred in 1969. If we were to compel Miss Bradshaw to go through a meaningless trial without counsel, then reverse and direct the district court to follow the statutory mandate and appoint counsel, it would be only at that point that Miss Bradshaw would finally obtain the hearing to which she is entitled under Title VII. In all likelihood another appeal would follow, whichever side prevailed at the second trial. Barring another reversal and assuming that both parties would accept our decision as final, Miss Bradshaw would, if she prevailed on the merits, have at last vindicated her right to the job she seeks. We estimate that her vindication would occur, at the earliest, in 1986, some 17 years after the alleged discriminatory act initially occurred. Whether such relief would be "effective" is highly questionable. That it would fail to comply with the purpose of Title VII, that expeditious relief be afforded civil rights litigants, is not.

first trial should she manage subsequently to obtain a reversal and a new trial. She could, for example, be bound by or impeached with her earlier testimony, or suffer adverse consequences from uninformed and unwise stipulations. We assume also that the district court would be hesitant to allow an entirely new round of discovery, although in a Title VII case the conduct of discovery can easily determine the outcome of the trial.[26] We must thus be concerned not only with the mechanical complexities of Title VII litigation in the abstract, but also with the prejudicial consequences of a civil rights litigant's lack of capacity to divine and pursue an effective litigation strategy. Moreover, to delay review of this order would deprive Miss Bradshaw of her right to expeditious determination of her substantive rights under Title VII, in contradiction of the statutory policy expressed by Congress.[27]

There is a superficial similarity between the injury that occurs when a civil rights plaintiff is erroneously compelled to proceed through a trial without counsel and the possible prejudice that may or may not occur when other civil litigants are compelled to proceed through a trial in which the other side is represented by an attorney

who is acting in disregard of a rule set forth in the Code of Professional Responsibility. In *Firestone* the Court held that in the latter case an appeal would not lie under section 1291. However, the Court based its decision on the fact that the petitioner in *Firestone* merely "hint[ed] at 'the possibility'" that prejudice might occur at the trial. The Court noted that the petitioner did not give a "single concrete example" of such prejudice. 449 U.S. 368, 101 S.Ct. at 674. The particular order at issue in *Firestone* posed only a minimal and hypothetical danger of prejudice to the party seeking to appeal.[28] However, it is not difficult to imagine—indeed, it is impossible to ignore—the irreparable injury that would result from a refusal to review an order denying a civil rights litigant appointed counsel. Because the likelihood that an appellant in Miss Bradshaw's position will be unable to proceed through trial and obtain effective review of the order is so high, and the prejudice inherent in proceeding to trial without counsel is so great, we do not view the injury that would inevitably result from a refusal to review the order before us as speculative or hypothetical.

There is another fundamental difference between *Firestone* and Miss Bradshaw's

---

**26.** Such hesitance would be understandable, and only points up vividly the waste of judicial resources that would be entailed by finding this order unappealable. *See* text accompanying notes 36–37 *infra*. It is likely that a new round of discovery would be necessary to a fair trial, wasteful or not. In any event, the prejudicial error which occurred in the first round might well be irremediable.

**27.** *See* note 41 and accompanying text *infra*.

**28.** *Firestone* involved an alleged violation of Disciplinary Rule 5–105 of the Code of Professional Responsibility, which relates to simultaneous representation of adverse parties on unrelated matters. A violation of this rule does not generally result in prejudice to the opposing side. Disqualification in such cases is properly viewed as serving a deterrent policy—it is a sanction, rather than a remedy designed to protect the complaining party from prejudice. Comment, *Access to Work Product of Disqualified Counsel*, 46 U.Chi.L.Rev. 443, 450–51 (1979). This may have formed the basis for the

Government's assertion, in an Amicus Brief filed in *Firestone*, that the petitioner there lacked standing to challenge the order, since in such a case it is the client, not the opposing party, that stands to suffer by the attorney's divided loyalties. *See* Comment, *supra*, discussing *IBM v. Levin*, 579 F.2d 271 (3d Cir. 1978):

> The court of appeals acknowledged that IBM was not injured in its capacity as a litigant in the antitrust suit and indeed that any possibility of injury was eliminated by IBM's dismissal of the firm in the labor matters. Although a Canon 5 violation of this sort may cause injury to the client, IBM's disqualification motion *appears incongruous since the infraction in this case would have tended to injure Levin, the plaintiff, not IBM.*

46 U.Chi.L.Rev. at 450–51 (footnotes omitted) (emphasis added). The Court did not reach this issue in *Firestone*. 449 U.S. at 379, 101 S.Ct. at 676 n.14.

case. In *Firestone* the Court was faced with the problem of whether to adopt a uniform rule governing denials of disqualification motions generally.[29] That class of orders involves various types of violations of the Disciplinary Rules which may have varying effects upon the opposing parties and the fairness of the underlying litigation. In some of those cases some prejudice to the opposing party might conceivably occur;[30] in others it is clear that none would occur,[31] or that it would be impossible to determine until after trial whether or not there was any actual prejudice. The Court noted that "[t]he propriety of the District Court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment. The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand . . . ." 449 U.S. 368, 101 S.Ct. at 675.

Given the varied range of potential injury presented by denials of motions for disqualification, the Court in *Firestone* elected to adopt a uniform rule that such orders are non-appealable; the Court indicated that any other approach would soon lead to a case by case determination and would ultimately result in piecemeal litigation in all such cases, thus defeating the avowed purpose of the Court's decision and the final judgment rule. In contrast, the denial of counsel to civil rights litigants creates the same clear threat of irreparable injury in all cases. Civil rights litigants are presumptively incapable of handling complex litigation themselves and of protecting themselves against the serious prejudice that occurs at trials in which their adversaries are represented by the most sophisticated law firms.[32] There is no need in Title VII cases to evaluate the particular facts of the individual case (facts properly subject to evaluation only after the trial) in order to determine that an unrepresented plaintiff's rights are seriously jeopardized by such a trial. Denial of counsel to civil rights litigants who are entitled to representation under the statute is inherently prejudicial.

We find further support for our conclusion in the unbroken line of cases holding orders *granting* motions for disqualification of counsel appealable under section 1291.[33] In *Armstrong v. McAlpin*, 625 F.2d 433, 440–41 (2d Cir. 1980) (en banc), *vacated and remanded on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), the Second Circuit spoke to the issue of reviewability in such cases:

> If the order is erroneous, correcting it by an appeal at the end of the case might

---

**29.** We are faced with that same problem here and, like the Court in *Firestone*, conclude that a uniform rule is necessary.

**30.** The Court stated that because some disqualification cases might involve actual injury which would justify appellate review prior to trial, a petition for writ of mandamus might be appropriate in some cases. 449 U.S. at 378, 101 S.Ct. at 676 n.13 (citing Note, *The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts*, 45 U.Chi.L.Rev. 450, 468–80 (1978)). Prior to *Firestone* this court had reviewed such orders by way of mandamus, *e. g., Chugach Elec. Ass'n v. United States Dist. Court*, 370 F.2d 441 (9th Cir. 1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967), and has recently indicated its intention to continue to do so in appropriate cases. *Unified Sewerage Agency v. Jelco*, 646 F.2d 1339 (9th Cir. 1981) (treating attempted appeal as petition for writ of mandamus).

**31.** *See* note 28 *supra*.

**32.** *See* H.R.Rep.No.238, 92d Cong., 2d Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Ad.News 2137, 2148.

**33.** *E. g., Armstrong v. McAlpin*, 625 F.2d 433, 440–41 (2d Cir. 1980) (en banc) (dicta), *vacated and remanded on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *General Electric Co. v. Valeron Corp.*, 608 F.2d 265, 266–67 (6th Cir. 1979); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 571 F.2d 390, 392–93 (7th Cir.), *aff'd in relevant part*, 584 F.2d 201, 203 (7th Cir. 1978) (en banc). This question was expressly reserved by the Supreme Court in *Firestone*, 449 U.S. at 372, 101 S.Ct. at 672 n.8.

well require a party to show that he lost the case because he was improperly forced to change counsel. This would appear to be an almost insurmountable burden.

The burden faced by Miss Bradshaw could be even more clearly insurmountable. Were she required to show prejudice to gain reversal after final judgment,[34] she would be placed in the anomalous position of being asked to show how she did things wrong and how the result would have differed had she done things properly; were she capable of this showing after trial, one might assume she would have done things right *at trial.* Were civil rights litigants thought to be capable of handling complex litigation properly at trial, or on appeal, Congress would not have thought it necessary to provide for appointment of counsel in the first place. We conclude that the requirement that orders be "effectively unreviewable" is met in the case of orders denying civil rights plaintiffs appointed counsel.[35]

### 4. The Final Judgment Rule and Congressional Intent

The finality requirement encompasses a number of specific policies, often lumped under the general perjorative heading of "the policy against piecemeal review." *In re Continental Investment Corp.,* 637 F.2d 1, 6 (1st Cir. 1980). First, "[i]t emphasizes the deference that appellate courts owe to the trial judge . . . ," *Firestone,* 101 S.Ct. at 673, or, conversely, confines the courts of appeal to their proper task of reviewing, rather than supervising, the work of the district court. Second, the finality requirement avoids "the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise . . . ." *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). The final concern is with avoiding "the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974).

As to the first concern, we have already discussed the unequivocal nature of the district court's refusal to appoint counsel for Miss Bradshaw. Its decision in this respect was final. Nor is there any cause for concern that our decision will interfere with the future actions of the trial judge, since our determinations in appointment of counsel cases do not in any way affect trial judges' rulings on the merits.

---

**34.** We do not decide this issue here. *See* note 23, *supra.*

**35.** While in this case we have examined each of the elements of the *Cohen* rule separately, and have found that each is satisfied, we do not mean to suggest that this type of analysis is the only proper method to be used in determining whether the collateral order exception applies in cases involving other types of orders. The three *Cohen* criteria are in some instances interrelated. In some cases one element may be of far greater significance to the outcome than the others. We have noted earlier that two of the three elements are not absolute in nature. The separability determination is at times a relative one—"*too* independent of the cause itself." The reviewability determination—*effectively* unreviewable—may require a similar kind of judgment. The same may in some instances be true with respect to the finality requirement. *See Spanos v. Penn Cent. Trans. Co.,* 470 F.2d 806, 808 n.3 (3d Cir. 1972) (per curiam).

We believe that the practical effect of the type of order involved is of substantial importance to the ultimate determination of its appealability. *Mathews v. Eldridge,* 424 U.S. 319, 331 n.11, 96 S.Ct. 893, 901 n.11, 47 L.Ed.2d 18 (1976). In view of the *Cohen* mandate that we take a "practical" approach to construing § 1291, a microscopic examination of each criterion in isolation is not necessarily either the proper or the best method of determining appealability in all types of cases.

We would note finally that it is sometimes easier to arrive at the correct result by seeking an understanding of the purposes of the laws involved, and the practical consequences of deciding to construe them one way rather than another, than by plodding endlessly through mystical and obscure technicalities which, when given a mechanistic and myopic application, can serve only to obstruct justice. *See* note 42 and accompanying text *infra.*

As to the second, the very nature of the order at issue eliminates any basis for suspicion that the appeal has been interposed for tactical reasons. It has now been more than five years since Miss Bradshaw filed her complaint concerning events that transpired more than ten years ago. It should be evident that she took this appeal not to harass her adversary by creating delay, but in all likelihood with the realization that without the assistance of counsel the proceedings might never reach a determination on the merits. We need no further assurance that delay is not her object. Civil rights litigants simply do not appeal an order denying them appointed counsel in order to obstruct "just claims," but rather do so in an attempt to vindicate their rights.

The last concern involves a tension that sometimes exists between allowing immediate review and avoiding delayed resolution of the overall cause of action. There is also a legitimate concern over the potential misallocation of judicial resources. Justice Frankfurter observed of the final judgment rule: "This requirement has the support of considerations generally applicable to good judicial administration. It avoids the mischief of economic waste and of delayed justice." *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 124, 65 S.Ct. 1475, 1478, 89 L.Ed. 2092 (1945). This consideration, like the others, must be evaluated with respect to the class of orders denying motions for appointment of counsel as a whole.

Where plaintiffs are *erroneously denied* the assistance of an appointed attorney, the policy of judicial economy is clearly served by permitting an appeal from the order denying plaintiff's motion. The order at issue here provides a clear example. Only by affording Miss Bradshaw counsel now can we assure the expeditious determination of her rights under Title VII, as that statute contemplates, and relieve her, the defendant, and the court, from the need to muddle through a sham of a trial, subsequent appeal, and another trial and appeal following the appointment of counsel.[36] The alternative of denying review would only assure that justice will be delayed, or more likely denied, and guarantee that the resources of the court and the parties would be senselessly dissipated in the process.[37]

Where plaintiffs are *properly denied* appointed counsel, under the standards discussed in part II of this opinion, judicial economy will also generally be served by permitting an appeal. Affirmance of the district court's denial of appointed counsel may well cause such plaintiffs to abandon their case rather than proceed to trial in an obviously hopeless cause. This is particularly true where the court of appeals affirms a determination that plaintiff cannot make even the minimal showing of merit necessary to invoke the provisions of section 2000e–5(f)(1)(B). Following such an affirmance, the pointlessness of proceeding to trial, with or without counsel, should be-

---

**36.** While the prospect of relitigation should not generally be a basis for "circumvent[ing] the policy against piecemeal review," *In re Continental Investment Corp.*, 637 F.2d 1, 6 (1st Cir. 1980), the first trial here would likely prove meaningless unless Bradshaw obtains counsel. In an important sense, then, it is not the prospect of relitigation, but rather the prospect that any meaningful litigation must await appointment of counsel, that we discuss here.

**37.** The Supreme Court has recognized that considerations of judicial economy, usually thought to be opposed to, and therefore to be balanced against, allowing immediate review, may give way in view of the potential harm attendant on delaying review of the order: Among "the considerations that always compete in the question of appealability, the most

important ... are the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950) (footnote omitted).

> The Court has also noted:
> Decisions in different contexts have emphasized that the nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied. The role these factors may play is illustrated by the intensely "practical" approach which the Court has adopted, *Cohen* ....

*Mathews v. Eldridge*, 424 U.S. at 331 n.11, 96 S.Ct. at 901, n.11.

come apparent. However, absent such an affirmance, there is a far stronger possibility that plaintiffs will attempt, by hook or crook, to survive a trial without counsel, in the hope that when they lose the Kafkaesque contest they will obtain a lawyer and a normal trial through a post-judgment appeal, and that ultimately they will have the opportunity to persuade the court of appeals of the meritoriousness of their claim.

Appeals from orders denying appointed counsel in cases where the district court has *properly* found that the plaintiff is not impecunious or that he has not made a genuine effort to obtain counsel are likely to be few in number. The concerns regarding judicial economy in these cases may be somewhat more closely balanced, but on the whole those interests are best served by permitting such appeals. When plaintiffs face a choice between voluntarily obtaining an attorney, which it is within their power to do, or needlessly delaying the pursuit of the remedy they seek by engaging in dilatory appeals contrary to their own interests, we presume that in most instances they will elect to obtain counsel on their own. Furthermore, a plaintiff who is able to obtain counsel for himself, but is so insistent on obtaining a court appointed attorney that he is willing to sacrifice his interest in an expeditious determination of his claim, may well decide to abandon his claim completely when the court of appeals affirms the order denying him appointed counsel; if the same plaintiff were compelled to proceed through trial without an attorney in order to obtain a decision from the court of appeals regarding his right to appointed counsel, his unreasonable insistence that such is his right might well cause him to do so.

We acknowledge that there may be a small number of cases in which the taking of an appeal will not serve the interests of judicial economy; those cases would not be readily identifiable. More important, we have no doubt that in the overwhelming majority of instances the contrary will be true. Considering the class of orders as a whole, as we must do in order to make any rule governing the type of order here involved effective and efficient, the interests of judicial economy fall squarely on the side of finding such orders appealable.

Another policy underlying the final judgment rule requires comment—the policy that the courts permit litigation to follow its normal course to termination on the merits. It is obvious that this is a purpose that also underlies the statutory provision for appointment of counsel in Title VII cases. Refusing to order appointment of counsel in appropriate cases makes it unlikely that those cases will follow the normal course to trial; should they reach that point, refusing to review the orders until after final judgment would make it unlikely that we would later be reviewing a "normal" trial on the merits. *Caston*, 556 F.2d at 1308.

We are concerned here not only with civil rights plaintiffs, but with civil rights defendants, and the legitimate interests of those defendants in the expeditious resolution of civil rights litigation, particularly in non-meritorious cases. We are concerned also with the effect on the administration of justice, the orderly processing of litigation generally, and the impact on all those who use our courts. We believe that all of these interests are furthered by the decision we reach here. While in a very few cases judicial resources may be utilized in an uneconomical manner, in the overwhelming majority of instances a substantial amount of judicial time and energy will be saved. In our opinion, concerns of judicial economy and the spectre of denying justice through delay do not compete in the case before us; rather both weigh in favor of finding orders of the type before us appealable. We believe that civil rights litigation will be disposed of more efficiently, economically, quickly, and fairly as a result of the decision we reach today.

Congressional recognition of the importance of the appointment of counsel provision, and of the general need to assure

expeditious vindication of the rights guaranteed by Title VII, supports our conclusion. The legislative history of this provision is understandably sparse, given the comprehensive nature of the 1964 Civil Rights Act, of which it was but a small part. Senator Hubert Humphrey made only passing reference to the provision in his explanation of the Dirksen-Mansfield substitute, which was passed as a compromise measure in lieu of the House bill. The provision was included, he said, in light of the recognition that "the maintenance of a suit may impose a great burden on a poor individual complainant ...." [38] Two amendments designed to weaken the provision were rejected in the Senate by wide margins.[39]

When Congress reenacted the provision as part of the 1972 amendments to Title VII, it again aroused little controversy; however, the policies underlying the provision were discussed. In reporting the bill that eventually passed both houses, the House Committee noted:

> By including this provision in the bill, the committee emphasizes that the nature of Title VII actions more often than not pits parties of unequal strength and resources against each other. The complainant, who is usually a member of a disadvantaged class, is opposed by an employer who not infrequently is one of the nation's major producers, and who has at his disposal a vast array of resources and legal talent.

H.Rep. No. 238, 92d Cong., 2d Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Ad. News 2137, 2148.

The importance of the provision was also recognized on the Senate floor, where the central controversy—whether the EEOC would be given the authority to issue cease and desist orders—was played out. Senator Dominick offered an amendment to remove the provision for cease and desist authority, but it also inadvertently removed federal employees from the appointment of counsel provision. Senator Javits offered an amendment to correct this oversight; the amendment was agreed to by a voice vote.[40] The impending deletion of cease and desist powers from the legislation made the appointment of counsel provision all the more important. As Senator Javits noted: "If the complainant is going to have nothing but a remedy in court, at least let us lock that up in the best way we can. ..." 118 Cong.Rec. 954–55 (1972).

Arguments on both sides of the larger controversy over cease and desist authority rested in the main on a shared recognition of the need for the speediest possible resolution of complaints of discrimination.[41] This policy is effectuated by the application we give the final judgment rule in the case before us.

We would add only that we are here dealing with a technical, but important, limit on the appellate jurisdiction of the federal court system. Courts may become enmeshed in overly literal applications of arcane technicalities, blinding themselves to the very *raison d'etre* of our laws and judi-

---

**38.** 110 Cong.Rec. 12721 (1964), *reprinted in* EEOC, Legislative History of Titles VII and XI of the Civil Rights Act of 1964, 3004 (1968).

**39.** 110 Cong.Rec. 14196 (Remarks of Senator Thurmond); *id.* at 14201 (Remarks of Senator Ervin).

**40.** 118 Cong.Rec. 954 (1972). Senator Javits noted:

> Mr. President, that is a very important right for the individual, just as it is a very impor-

tant right for a Government employee, for the individuals involved are not, in the main, high salaried, in that those who would be likely to sue in these equal employment opportunity cases are fairly modest people.

**41.** *E. g.*, 118 Cong.Rec. 942 (1972) (Remarks of Senator Williams); *id.* (Remarks of Senator Dominick); *id.* at 943 (Remarks of Senator Humphrey); *id.* (Remarks of Senator Talmadge); *id.* at 3967–69 (Remarks of Senator Javits).

cial system.[42] Such would be the result were civil rights litigants compelled to proceed on their own through meaningless and wasteful trials before being permitted to establish their right to appointed counsel. What Justice Frankfurter stated so eloquently with regard to an important rule of civil procedure is equally applicable to section 1291 in the context of appointment of counsel in civil rights cases:

> Not the least important business of this Court is to guide the lower courts and the Bar in the effective and economical conduct of litigation. That is what is involved in this case. The immediate issue is the construction of one of the important Rules of Civil Procedure. That construction in turn depends upon our basic attitude toward those Rules—*whether we take their force to lie in their very words, treating them as talismanic formulas, or whether we believe they are to be applied as rational instruments for doing justice between man and man in cases coming before the federal courts.*

*Johnson v. New York, N. H. & H. R. R.*, 344 U.S. 48, 55–56, 73 S.Ct. 125, 129–30, 97 L.Ed. 77 (1952) (Frankfurter, J., dissenting) (emphasis added).

## II. APPOINTMENT OF COUNSEL

■ The 1964 Civil Rights Act provides for appointment of counsel in employment discrimination cases "in such circumstances as the court may deem just." Three factors have emerged as relevant to the exercise of the district court's discretion under this broad statutory mandate. The court is required to assess: (1) the plaintiff's financial resources, (2) the efforts made by the plaintiff to secure counsel, and (3) whether the plaintiff's claim has merit. *Caston*, 556 F.2d at 1308–10; *see also Luna v. International Ass'n of Machinists & Aerospace Workers*, 614 F.2d 529, 531 (5th Cir. 1980).[43] Under these standards, which we adopt, the district court's error in denying Miss Bradshaw's motion for appointment of counsel is clear.

■ Normally, the district court's decision will be subject to review only for an abuse of discretion. *White v. United States Pipe & Foundry Co.*, 646 F.2d 203, 205 (5th Cir. 1981); *Spanos v. Penn Central Transportation Co.*, 470 F.2d 806, 808 (3d Cir. 1972) (per curiam). In this case, however, the district court's decision does not represent the reasoned judgment necessary to application of that standard. "[S]uch discretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975) (quoting *United*

---

**42.** Justice Frankfurter, who certainly admired, understood, and vigorously applied technical principles, when they served their intended function, noted the dangers of " 'an almost superstitious reverence for the dark technicalities . . . ,' [the] belief that judges must be imprisoned in technicalities of their own devising," and a judicial approach that holds "obedience to lifeless formality [as] the way to justice." *Johnson v. New York, N. H. & H. R. R.*, 344 U.S. 48, 62, 73 S.Ct. 125, 132–33, 97 L.Ed. 77 (1952) (Frankfurter, J., dissenting) (quoting Sir James Parke, 15 D.N.B. 226, on the career of Baron Parke).

**43.** The three factors listed in the text are applicable in all cases. They are usually the only relevant factors. The record before us does not provide any basis for consideration of other factors in this case. We do not mean to suggest, however, that in other cases where the particular facts so warrant other similar factors may not be taken into account by the district courts, so long as they are treated in a manner consistent with the policy of the statutory provision. We agree in this respect with the Fifth Circuit, which in its most recent decision noted:

> So long as a district court confines itself to an evaluation of these considerations, or similar factors particularly relevant under the facts of a given application, a district court's action in denying appointed counsel will be subject to review only for an abuse of discretion. At all events, "[d]istrict courts should be sensitive to the problems faced by *pro se* litigants and innovative in their responses to them."

*White v. United States Pipe & Foundry Co.*, 646 F.2d 203, 205 (1981) (quoting *Caston*, 556 F.2d at 1310).

*States v. Burr,* 25 F.Cas. 30, 35 (C.C.Va. 1807) (No. 14,692) (Marshall, C. J.)). As was the case in *Caston,* "[w]e are unable to conclude from the record that the district court exercised a reasoned and well-informed discretion which we may review." 556 F.2d at 1308.

■ The only reason offered by the district court for denying the motion for appointment of counsel was its suggestion that "if a plaintiff's claim has merit, it would appear that he will easily secure counsel in light of the statutory provision for award of attorney's fees ...." Congress indeed intended the prospect of an award of fees to the prevailing party as a means to "make it easier for a plaintiff of limited means to bring a meritorious suit." 110 Cong.Rec. 12724 (1964) (Remarks of Senator Humphrey). Yet the provision allowing appointment of counsel indicates congressional recognition of the fact that an award of fees may prove an insufficient incentive. The only plausible reason for enactment of the provision was Congress' recognition that some civil rights claimants with meritorious cases would be unable to obtain counsel. The district court's reasoning would render the statutory provision for appointment of counsel nugatory; the provision for appointment of counsel would be wholly unnecessary if all meritorious claims attracted retained counsel. If the district court's rationale were uniformly adopted, there would never be a case in which the congressional provision could be utilized. Thus, the district court's reasoning is directly contradictory to the mandate and purpose of the statutory provision.[44]

The district court's decision, in the same order in which it denied Miss Bradshaw's first motion for appointment of counsel, to allow Miss Bradshaw to proceed *in forma pauperis, a fortiori* resolved the first issue under *Caston* in her favor. A lesser showing of indigency is required to satisfy the test for appointment of counsel. *See Caston,* 556 F.2d at 1309; *Petete v. Consolidated Freightways,* 313 F.Supp. 1271, 1272 (N.D.Tex.1970).

Miss Bradshaw has also satisfied the second requirement; she has shown more than the requisite degree of diligence in her efforts to secure counsel. Affidavits filed with the district court in support of her motion indicate that she contacted more than ten attorneys, each of whom declined to represent her except upon financial terms that she was unable to meet. All that can be required of plaintiffs under this aspect of the test is that they make what can be considered a reasonably diligent effort under the circumstances to obtain counsel. There may be factors that would justify a lesser effort than that made here,[45] but it is clear that Miss Bradshaw has done all that may reasonably be expected. She may not be required "to exhaust the legal directory" as a prerequisite to the appointment of counsel. *Caston,* 556 F.2d at 1309.

The final requirement, that the plaintiff's claim be shown to have some merit, is also satisfied in this case. As we noted earlier, the EEOC determination regarding "reasonable cause" should be given appropriate weight in deciding this aspect of the ap-

---

**44.** The Fifth Circuit recently faced the same suggestion, and its response, with which we agree fully, was unequivocal: "The district court's seeming assumption ... that meritorious claims will never need the benefit of [appointed counsel] is completely at odds with Congress' implicit conclusion to the contrary." *White,* 646 F.2d at 206–07 n.7.

See also Caston, 556 F.2d at 1309:
We are not unmindful of the fact that in some areas, either because of unpopularity or unfamiliarity, a particular plaintiff may be unable to locate an attorney who is willing to prosecute even a meritorious claim.

As Miss Bradshaw's affidavits filed in support of her motion indicate, there is also the problem that attorneys otherwise willing to take the case on a contingency basis may prove unwilling to do so without an advance of substantial costs.

**45.** *See, e. g., Luna v. International Ass'n of Machinists & Aerospace Workers,* 614 F.2d 529, 531 (5th Cir. 1980) (contacting four attorneys satisfies requirement of reasonable diligence).

pointment of counsel question.[46] Where the administrative agency charged with enforcing the statute has made a determination that there is reasonable cause to believe that the plaintiff was the victim of discrimination, as it has in Miss Bradshaw's case, the court need ordinarily make no further inquiry for purposes of appointment of counsel. The EEOC determination is, of course, subject to rebuttal by the defendants, but only to a very limited extent.[47] In this case no basis exists for ignoring the EEOC determination.[48] The claim is therefore meritorious for purposes of the provision regarding appointment of counsel.

## CONCLUSION

We conclude that orders denying civil rights plaintiffs appointed counsel are final, that they are "too important to be denied review," and that they are "separable from, and collateral to," the cause itself. *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1226. We also conclude that there is a clear and unacceptable risk that "'crucial collateral claims [will] be lost ...'" *Firestone*, 449 U.S. 368, 101 S.Ct. at 674 (quoting *Mathews v. Eldridge*, 424 U.S. at 331 n.11, 96 S.Ct. at 901 n.11), unless the right to appeal from such orders is recognized, and that immediate review is required "so as not to cause ... potentially irreparable injuries to be suffered" in those cases. *Firestone, id.* We thus hold that orders denying Title VII plaintiffs appointed counsel are immediately appealable under section 1291.

We adopt the three criteria set forth in this opinion, for use by district courts in

46. *See* text accompanying note 20 *supra.*

47. *See* text accompanying note 20 *supra.*

48. *See* note 20 *supra.*

1. The Tenth Circuit recently took this position in *Cotner v. U. S. Probation Officer Mason*, 657 F.2d 1390 (10th Cir. 1981). I do not hesitate to reach this conclusion simply because some other circuits have, in my judgment, incorrectly reached the opposite conclusion. The opinions cited by the majority, at footnote 11, contain so little analysis that they can hardly be con-

determining, pursuant to 42 U.S.C. § 2000–5(f)(1)(B), whether counsel should be appointed in particular cases. We hold that Miss Bradshaw has met those criteria.

The decision of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.

WALLACE, Circuit Judge, dissenting:

I would not reach the merits of this appeal because this case is not properly before us. We lack jurisdiction to hear an interlocutory appeal from an order denying appointment of counsel in a Title VII case. Therefore, I respectfully dissent.

We are a court of limited jurisdiction and have no power to reach out beyond our jurisdiction to correct errors. The Supreme Court has recently cautioned that "interlocutory orders are not appealable 'on the mere ground that they may be erroneous.'" *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 at 378, 101 S.Ct. 669 at 675, 66 L.Ed.2d 571 (1981) (*Risjord*), quoting *Will v. United States*, 389 U.S. 90, 98 n.6, 88 S.Ct. 269, 275 n.6, 19 L.Ed.2d 305 (1967). The order from which Bradshaw appeals satisfies neither 28 U.S.C. § 1291, nor the collateral order exception as set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (*Cohen*). Therefore, we have no jurisdiction to decide the case.[1]

The Supreme Court has emphasized the strong policy behind the rule that appeals are to be made only following final judgment on the merits.[2] Similarly, the Court

sidered persuasive. Some rely exclusively on *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305 (5th Cir. 1977). *Caston*, which misconstrues the *Cohen* doctrine, contains only one paragraph of analysis. While the majority more than makes up for this paucity of reasoning, I find its analysis faulty.

2. The Supreme Court has recently discussed the importance of the final judgment rule:

This rule, that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits, serves a number of important purposes. It emphasizes

has stressed that the *Cohen* exception is narrow. Bradshaw has not carried her heavy burden of showing that the order appealed from falls within the "small class" of orders appealable under the *Cohen* exception. *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225.

In *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 312 (1978) (*Coopers & Lybrand*), the Court set forth the requirements that an order must meet to be appealable under *Cohen*: "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Id.* at 468, 98 S.Ct. at 2458. This language does not, as the majority implies, alter the *Cohen* test. These three requirements are merely a different formulation of the *Cohen* "too important to be denied review and too independent of the cause itself" language quoted by the majority. *Ante* at 1306. *See Cohen,* 377 U.S. at 546, 69 S.Ct. at 1226. The majority's quotation from *Caston v. Sears, Roebuck & Co.,* 556 F.2d 1305 (5th Cir. 1977), suggests that the *Cohen* "too important" language requires courts to determine the significance of the substantive question being appealed. *Coopers & Lybrand* makes it clear that the "too important" language refers to whether the appellant can obtain review of the question after final judgment. The majority's use of this language from *Caston* is indicative of the fundamental error of the majority's whole approach. The majority appears to believe that we can accept jurisdiction when we perceive an injustice or when an area of law that we

consider important is involved. Our appellate jurisdiction depends neither on the magnitude of the error below, nor on where the particular claim falls in each individual judge's pecking order of significant areas of law.

Nor can I agree with the majority that the nature of Title VII cases, as important as they are, necessarily provides for interlocutory appeal of this order. Congress has determined that finality should be the prerequisite for appellate jurisdiction. Congress has not expanded appellate jurisdiction to reach this denial of appointment of counsel, though it certainly could have done so when it enacted the provision of Title VII permitting the district courts to appoint counsel in Title VII cases. *See* 42 U.S.C. § 2000e–5(f)(1). Further, Congress did not make appointment of counsel a matter of right, but rather left it to the discretion of the district courts. Therefore, Congress must have anticipated that some Title VII cases would be prosecuted in propria persona.

I

I turn now to the application of the *Coopers & Lybrand* analysis. I agree with the majority that the order denying counsel, at least under the facts of this case, was final. This is the only one of the three *Coopers & Lybrand* requirements that is clearly·satisfied in this case.

It is not necessary for me to rest my position on the separability from the merits requirement, because the third requirement is so obviously lacking. I observe, however, that there are problems with the majority's

the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the District Judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of sepa-

rate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Cobbledick v. United States,* 309 U.S. 323, 325 [60 S.Ct. 540, 541, 84 L.Ed. 783] (1940). . . . The rule also serves the important purpose of promoting efficient judicial administration. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368 at 374, 101 S.Ct. 669 at 673, 66 L.Ed.2d 571 (1981).

holding that the order is separable from the merits. One of the purposes of this requirement is to preclude appeals which enmesh the court of appeals in the merits of a case at an early stage. *Coopers & Lybrand*, 437 U.S. at 469, 98 S.Ct. at 2458. In determining whether to appoint counsel for a Title VII plaintiff, a district judge must make some determination of whether the plaintiff's claim has merit. *See Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305 (5th Cir. 1977).

It is true that a district judge must make a similar determination in deciding whether to grant leave to proceed in forma pauperis. Orders denying such leave are appealable. *Lipscomb v. United States*, 301 F.2d 905 (9th Cir. 1962). The involvement with the merits in the in forma pauperis situation, however, is slight. The standard is merely whether the plaintiff's case is frivolous or malicious. 28 U.S.C. § 1915(d); *Torres v. Garcia*, 444 F.2d 537 (9th Cir. 1971).

It is quite possible that a district judge should become much more involved in the merits in determining whether to appoint counsel than he does in determining whether to grant leave to proceed in forma pauperis. First, the district judge should hesitate to appoint counsel to a losing case. *See Maclin v. Freake*, 650 F.2d 885 at 887–888 (7th Cir. 1981). I know of no provision for the payment of losing counsel appointed under Title VII. *See Beckett v. Kent County*, 488 F.Supp. 70, 74 n.4 (W.D.Mich. 1980); *Sol v. I.N.A. Ins. Co.*, 414 F.Supp. 29, 30 (E.D.Pa.1976). To appoint counsel to a non-frivolous, but likely losing case without compensation creates significant, possibly constitutional, problems.[3] Second, the district judge may examine the factual issues in the case to determine whether counsel is needed to investigate and marshall the facts. If the litigant can handle the factual issues, it may not be necessary to appoint counsel. *See Maclin v. Freake, supra,* at 887–888.[4]

Thus, a district judge may be justified in examining the merits closely to determine whether the plaintiff's case is substantially likely to succeed. Of course, in his calculations, the district judge should assess the likelihood of success of the case when prosecuted by counsel, rather than in propria persona. The district judge should balance the hardship to counsel with the benefit to the plaintiff. To determine whether a district judge's decision on the appointment of counsel constitutes an abuse of discretion, we would have to become at least somewhat enmeshed in the merits.

I must take issue with the majority's unfortunate contention that an EEOC determination of reasonable cause will usually be sufficient to establish the "merit" requirement and thus obviate the need to become enmeshed in the facts. The majority cites no authority for its conclusion that an EEOC reasonable cause determination creates a presumption in favor of the plaintiff. Instead, it relies on the EEOC's brief in this case. *Ante* at n.20. Although there is little authority on the pre-trial significance of EEOC determinations, a reasonable interpretation is that an EEOC determination, whether finding reasonable cause or not, is significant only to establish jurisdiction for a civil action pursuant to Title VII.

---

**3.** Whether the appointment of counsel provision violates the Thirteenth Amendment is open to question, and I express no view on it. *See White v. United States Pipe & Foundry Co.*, 646 F.2d 203, 205 n.3 (5th Cir. 1981). I merely observe that in the exercise of his discretion in appointing counsel, the district judge may consider the possibility that an attorney may have to devote substantial time in a complex area of the law without compensation.

**4.** The majority makes much of an in propria persona litigant's inability to handle complex legal problems. I agree that the district judge should consider this in determining whether to appoint counsel. I observe, however, that Bradshaw has now successfully prosecuted two appeals in this court in her two attempts. Many attorneys have not fared as well. Further, the defendants in this case, who are represented by counsel, conceded the jurisdictional issue that has divided us so sharply. Thus, it would appear that lack of counsel does not inherently prejudice a party.

See 42 U.S.C. § 2000e–5(f)(1); *Hyatt v. United Aircraft Corp.*, 50 F.R.D. 242, 246 n.4 (D.Conn.1970).

A second problem arises with the majority's treatment of the significance of EEOC proceedings. The majority takes the position that an EEOC finding of reasonable cause establishes the merit of the plaintiff's case for the · purpose of appointment of counsel, but that an EEOC determination of no reasonable cause fails to establish lack of merit. *Ante* at 1305, 1309 & n.20. An EEOC finding of no reasonable cause is not a jurisdictional bar to the filing of a civil suit under Title VII., *McDonnell Douglas v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822–23, 36 L.Ed.2d 668 (1973). This rule is based on jurisdictional considerations, however, not on any notion that findings of no reasonable cause are inherently more suspect than findings of reasonable cause. *See id.* The majority fails to offer any explanation for its disparate treatment of these two EEOC findings.

The majority would permit a plaintiff to attack an EEOC determination of no reasonable cause on the merits. *Ante* at n.20. This would require pre-trial involvement with the merits of the case. Under the majority's view, if the district court still determined that there was insufficient merit to the case to appoint counsel, the plaintiff could take an interlocutory appeal. We would then necessarily become enmeshed in the factual issues raised in the plaintiff's attack on the EEOC's determination, in violation of the requirements of *Coopers & Lybrand.*

Inexplicably, the majority would not accord a defendant the same right as a plaintiff to attack the merits of an unfavorable EEOC finding. The majority would then compound this inequity by requiring this unchallenged EEOC determination of reasonable cause to satisfy the merit requirement. Thus, according to the majority's reasoning, the district judge may become enmeshed in the facts at an early stage only when it may benefit the plaintiff. If it

may benefit the defendant, it cannot be done. Further, the majority bootstraps its prohibition of a defendant's attack on the merits of an EEOC determination into the plaintiff's satisfaction of the "separability" element of *Coopers & Lybrand.* But, by virtue of the majority's holding, a plaintiff may still appeal a denial of appointment of counsel after he has attempted to attack an unfavorable EEOC finding, even though the separability element is not satisfied. This is not defensible.

## II

I would hold that Bradshaw has failed to show that the order denying her counsel is effectively unreviewable on appeal from a final judgment. Absent this showing, the order is not appealable. An appealable order must involve "an asserted right the legal and practical value of which would be *destroyed* if it were not vindicated before trial." *United States v. McDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978) (emphasis added). The claimed right must be such that "denial of immediate review would render *impossible* any review whatsoever . . . ." *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971) (emphasis added).

This requirement is very narrow. It is not sufficient that the appellant show that there is some injury, or that the erroneous order will taint the rest of the proceedings. Rather, the appellant must show that the order necessarily causes injury that will be irreparable unless appealed immediately.

To illustrate the point, a collateral order rejecting a criminal defendant's claim of double jeopardy is immediately appealable because if he is correct, he has, the Court has held, the right not to be put to trial. To require him to wait until final judgment would result in the destruction of his right not to be put to trial. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Similarly, a criminal defendant denied bail may appeal immediately. *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1,

96 L.Ed. 3 (1951). The right he is asserting is to be free until he is convicted. This right cannot be preserved if he is forced to wait until after that conviction to appeal. *See Risjord,* 449 U.S. at 376, 101 S.Ct. at 675. In both situations, the rights sought to be vindicated are extinguished by the time a final judgment is entered.

Conversely, several kinds of orders are not immediately appealable because no rights are extinguished, even though the orders, if erroneous, will taint the proceedings or may prejudice one of the parties. For example, the denial of a motion to disqualify an attorney, *Risjord,* and the denial of a motion for recusal of a judge, *United States v. Washington,* 573 F.2d 1121 (9th Cir. 1978), are not immediately appealable. In both of these situations, the risk is run that a full trial will be conducted under the taint of an erroneous order that will require the trial to be repeated. Further, an erroneous discovery order may compel the production of privileged information that might seriously prejudice the disclosing party. Nonetheless, discovery orders are generally not appealable before final judgment. *Legal Aid Society v. Dunlop,* 618 F.2d 48, 51 (9th Cir. 1980) (per curiam).

These two lines of cases can be distinguished. In the cases involving appealable interlocutory orders, the appellant could receive no adequate remedy on appeal after judgment. He would already have lost the rights he seeks to preserve. In the cases in which orders have been held non-appealable, the appellant can generally be made whole after trial by being granted a new trial. Bradshaw has this same remedy available to her after trial. Forcing her, even erroneously, to proceed to trial without an attorney does not deprive her forever of any right nor cause her irreparable harm. Unlike a litigant erroneously denied leave to proceed in forma pauperis, Bradshaw may continue her suit. By proceeding to trial without counsel, she forfeits no right. I concede that an erroneous order denying counsel may taint the rest of the

proceedings. If Bradshaw loses, the mistake would likely be reversible error on appeal. It is conceivable that Bradshaw may suffer some residual harm, though this is speculative at best. Possibly, she may make some erroneous tactical decision that will prejudice her on retrial with counsel. It is also possible, however, that she will lose on the merits without prejudicing herself on retrial or that she will prevail without counsel. I fail to see the "inherent prejudice" on which the majority relies. The Supreme Court has stated that before it will find an order effectively unreviewable after a final judgment, there must be a showing of some concrete, irreparable injury, not merely a possibility of injury. *Risjord,* 449 U.S. at 375–76, 101 S.Ct. at 674–75. The majority has failed to point to a single concrete injury that is irreparable within the meaning of *Cohen* and its progeny. Speculation simply will not suffice.

I recognize the importance of the appointment of counsel in appropriate Title VII cases. One prejudiced by the failure of a district judge to appoint counsel is not left with appeal after judgment as his or her only avenue of relief. Appellate assistance can be requested by filing a petition for a writ of mandamus. *See* 28 U.S.C. § 1651; *Bauman v. United States District Court,* 557 F.2d 650 (9th Cir. 1977). But Bradshaw requests review by appeal. We have been left with clear guidelines concerning this jurisdiction, however. The majority has overstepped the bounds described by those guidelines. In particular, it has changed the *Coopers & Lybrand* requirement that the order be effectively unreviewable on appeal to a requirement that the appellant show a possibility of some prejudice by having to wait until after final judgment to appeal. By relaxing or eliminating the *Coopers & Lybrand* requirement, the majority is doing what it perceives to be justice in this case. The next case may present an order for which an immediate appeal may not seem so just to the majority, but the appellant may cite the majority's opinion in this case to make a tenuous

showing of prejudice sufficient to obtain an interlocutory appeal. We are better advised to adhere to sound legal principles than to change them to fit our perception of how a particular case should be decided.

### III

I agree with the majority that we ought to be concerned about judicial economy. I cannot agree that its decision in this case is economical. One side, the losing side, always has an interest in immediately appealing orders. If it can vindicate its views immediately, it either will not have to continue in the lawsuit at all or will be able to proceed without the possibility of retrial. Thus, to one side, immediate review will always seem economical. Congress, by enacting section 1291, has mandated that we hear these appeals after final judgment.

Judicial economy is preserved by the final judgment rule which generally requires that the appeals in one case be heard at one time, after final judgment. Thus, only one appeal and, if necessary, only one retrial is required. By permitting interlocutory appeals, we only add to the number of appeals, increase the time spent by the parties on appeal and on the case as a whole, and delay the proceedings in the district court. I cannot agree that the majority has struck a blow for judicial economy in this case when it has relaxed the requirements for interlocutory appeals.

The majority's suggestion that plaintiffs will not appeal from proper denials of appointment of counsel is unreasoned. The majority's entire premise is that plaintiffs without attorneys are unable to make correct legal determinations for themselves. Yet, the majority assumes that such plaintiffs will be able to assess the correctness of a district court's ruling and their likelihood of success on appeal. More likely, they will think that any ruling made against them is wrong. Thus, they will appeal from correct rulings as often as incorrect ones.

Further, a plaintiff's interest in pursuing an appeal may be substantial. A plaintiff, particularly one with a weak case, may be able to force a settlement by interposing appeals and otherwise dragging out the litigation. As legal fees increase, the defendant may become more interested in paying off the plaintiff than in paying his or her attorneys. Thus, the majority has created a delaying tactic, which does not serve judicial economy and which may serve as a weapon in a strike suit.

Because the harm that Bradshaw may suffer is both speculative and repairable after appeal from a final judgment, I would hold that the order denying appointment of counsel in a Title VII action is not effectively unreviewable on appeal from a final judgment and therefore is not appealable until final judgment. I would dismiss the appeal for want of jurisdiction.